# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| 50 MORGAN HOSPITALITY GROUP, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>EXCEL HOTEL SERVICES, INC., D/B/A<br>EXCEL & ASSOCIATES,<br><br>    Defendant. | No. 3:17-cv-332 (MPS) |

**MEMORANDUM AND ORDER**

On September 20, 2018, the parties reported that this case had settled. Accordingly, I dismissed the case prejudice and directed the clerk to administratively close the file, but allowed the parties 30 days to file a stipulation of dismissal or a motion to reopen the case. The parties requested four extensions of the final dismissal deadline. On February 8, 2019, William Crosskey and Crosskey Architects, LLC (together, "Crosskey") filed motions to reopen the case and enforce the parties' settlement agreement, which Excel Hotel Services, Inc. ("Excel") later joined. (ECF Nos. 117, 118.) 50 Morgan Hospitality Group, LLC ("50 Mogan") opposed the motion. On July 17, 2019, Excel filed a motion for an expedited ruling on the motion to enforce the settlement agreement in light of an upcoming hearing in a related state-court case. I convened a telephonic conference on July 26, 2019, during which I granted Excel's motion to expedite and granted Crosskey's and Excel's motions to reopen the case and enforce the settlement agreement. I explained my reasoning on the call but noted that I would supplement that reasoning with a written opinion in due course. I write now to provide that supplement.

    **I.    Procedural Background**

Plaintiff 50 Morgan brought this lawsuit against Defendant Excel in Connecticut Superior Court, alleging that Excel failed to fulfill its obligations as a general contractor for a construction

1

project converting the upper floors of a hotel into multi-family apartments. 50 Morgan asserted claims for breach of contract, intentional misrepresentation, negligent misrepresentation, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes ("Conn. Gen. Stat.") § 42-110a *et seq*. (ECF No. 73-3.) Excel removed the action to this Court and filed an Answer, Affirmative Defenses, and Counterclaims against 50 Morgan. (ECF No. 16.) Specifically, Excel asserted counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, violation of the CUTPA, and foreclosure of a mechanic's lien in connection with the Project. (ECF No. 16.) Excel then filed a Third-Party Complaint with crossclaims and an Apportionment Complaint against several subcontractors[1]: Electrical Contractors, Inc. ("ECI"); Kaurette Constricution, Inc. ("Kaurette"); Crest Mechanical Services, Inc. ("Crest"); TPC Systems ("TPC"); Crosskey Architects, LLC; and William Crosskey. Excel's complaint asserted claims for breach of contract and indemnification against ECI, Kaurette, Crest, and TPC, and claims for intentional misrepresentation, negligent misrepresentation, violation of the CUTPA, and tortious interference with contractual relations against Crosskey Architects and Crosskey. (ECF Nos. 88, 89.)

On July 17, 2018, the parties requested to modify the scheduling order to allow them to "focus their resources on the now-scheduled mediation of this action which [was] to take place on August 28, 2018." On September 21, 2018, they reported that the case had settled. Accordingly, I ordered the case dismissed and allowed the parties until October 20, 2018 to file a stipulation of dismissal and to move to reopen the case. The parties filed four motions for extensions of the

---

[1] I refer to all six Third-Party Defendants as subcontractors for the sake of brevity, but note that Crosskey Architects LLC and William Crosskey contracted directly with 50 Morgan.

original deadline. (ECF Nos. 109, 111, 113, 115), and on February 8, 2019, Crosskey moved to restore the case to the active docket and enforce the parties' settlement agreement. Excel joined the motion on April 1, 2019. (ECF No. 124.)

**II.    Legal Standard**

"A settlement agreement is a contract and is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). "A contract is formed when there is a meeting of the minds of the parties on the essential terms of an agreement." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001). "When both parties have mutually assented to a contract, the agreement is binding even if it is not signed." *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) (applying Connecticut law). "The only essential prerequisite for a valid settlement agreement is that the [parties] . . . mutually assent to the terms and conditions of the settlement. It is well recognized that an agreement to settle a lawsuit, voluntarily entered into, is binding on the parties." *Millgard Corp. v. White Oak Corp.*, 224 F. Supp. 2d 425, 431 (D. Conn. 2002). "A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous.'" *Omega Engineering, Inc.*, 432 F.3d at 444. "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes." *Brown v. Nationscredit Commercial*, No. 3:99CV592(EBB), 2000 WL 888507, at *1 (D. Conn. Jun. 23, 2000).

"[A] settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing . . . ." *Millgard Corp.*, 224 F. Supp.2d at 432. When a settlement agreement has not been reduced to a signed writing, courts in Connecticut enforce the agreement if the parties assented to the terms of

the settlement agreement and manifested an intent to be bound. "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." *Omega Engineering, Inc.*, 432 F.3d at 444.

### III. Discussion

As discussed on the telephonic conference on July 26, 2019, I find that counsel for 50 Morgan, Attorney Luke Conrad, had apparent authority to negotiate and enter into a settlement agreement on its behalf and that Attorney Conrad manifested 50 Morgan's assent to the settlement agreement circulated on December 19.

### A. Attorney Conrad Had Apparent Authority to Bind 50 Morgan[2]

50 Morgan's conduct clearly communicated that Attorney Conrad had authority to settle this case on its behalf. An attorney's authority to bind his or her clients to a contract is governed by the principles of agency law. *Ackerman v. Sobol Family P'ship, LLP*, 298 Conn. 495, 509 (2010). "[I]t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which [its] agent engages with authority from the principal, and within the scope of the agent's employment." *Maharishi Sch. Vedic Scis., Inc. v. Connecticut Constitution Assocs. Ltd. P'ship*, 260 Conn. 598, 606 (2002). Where an agent's actions are not expressly authorized by the principal, the principal may nevertheless be bound where the "principal, through [its] own acts or inadvertences, causes or allows third persons to believe [its] agent possesses" the

---

[2] 50 Morgan filed a motion to strike the portion of Crosskey's reply brief in which it argued that Attorney Conrad had apparent authority to bind 50 Morgan to the settlement agreement. (ECF No. 129.) I denied the motion because Crosskey's argument plainly fell within the scope of the arguments that 50 Morgan had raised in its opposition to the motion to enforce the settlement agreement. (ECF No. 134.) Nevertheless, I allowed 50 Morgan to file any evidence in support of its opposition directed to the arguments Crosskey raised in its reply. (*Id.*) 50 Morgan did not file any such evidence or seek an extension of time in which to do so.

4

requisite authority to negotiate and enter agreements on its behalf. *Id.* at 607. Connecticut courts assessing an agent's apparent authority consider (1) whether it "appear[ed] from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted the agent to act as having such authority;" *Ackerman*, 298 Conn. at 508; and (2) whether "the party dealing with the agent . . . acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." *Id*. at 509

Here, 50 Morgan held Attorney Conrad out as possessing authority to settle the case. The parties held a mediation session with Attorney John Bulman on August 28, 2018. (Conrad Declaration, ECF No. 120-2 ¶ 7.) Attorney Conrad represented during the July 26 telephone conference that the mediator required each party to send representatives with binding settlement authority to the mediation. He further represented on the July 26 telephonic conference that he attended the session together with in-house counsel and a project manager for 50 Morgan. Although he asserts that in-house counsel and the project manager were the representatives with settlement authority, Attorney Conrad was authorized to make the main presentation for 50 Morgan at the mediation and was the primary point of contact with the mediator and the other parties before the mediation. He continued as the primary contact for 50 Morgan after the mediation as well. In September, 50 Morgan authorized him to communicate to the mediator and the other parties 50 Morgan's assent to provide $100,000 toward a settlement fund that would be paid to Excel. This assent formed a component of the financial terms of the agreement in principle ultimately brokered by the mediator. In addition, when the parties were drafting the details of the final written agreement, Conrad sent comments that he represented were from his "team." (ECF No. 118-8 at 52.) On the telephonic conference, he explained that the reference to his "team"

5

included in-house counsel for 50 Morgan—the same individual who had settlement authority at the mediation—and he acknowledged that the other parties to the settlement agreement would have understood as much. In sum, 50 Morgan held Attorney Conrad out as having authority to settle the case at the mediation session in August, and it continued to allow him to represent himself as having that authority as the parties resolved further details of the agreement through December.

There is also evidence that the other parties reasonably believed that Attorney Conrad had authority to settle the case. "If a principal has given an agent general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority." *Ackerman*, 298 Conn. at 512 (citation and quotation marks omitted). As noted, Attorney Conrad was the primary point of contact for all parties in settlement discussions. He was authorized to offer $100,000 on 50 Morgan's behalf and to negotiate the details of the subcontractor releases. Except in one specific email he identified, in which he communicated comments on a single provision in the agreement with the caveat that his client had not yet reviewed his comments, neither he nor another representative of 50 Morgan ever communicated that his authority was limited in any way. This is noteworthy because the documents attached to the parties' briefs show that they sent dozens of emails and had numerous phone calls to finalize the memorialization of the agreement, and Attorney Conrad participated in these communications. The single example Conrad identified of his communicating a to limit on his authority only underscores the reasonableness of the opposing parties' belief that he was otherwise authorized to negotiate the details of the settlement agreement based on a months-long course of conduct by 50 Morgan and Attorney Conrad. I therefore find
6

that it was reasonable for the other parties to believe that Attorney Conrad had authority to bind 50 Morgan to an agreement.

**B. Attorney Conrad Manifested 50 Morgan's Assent to the December 19 Settlement Agreement**

Attorney Conrad communicated that 50 Morgan assented to the December 19 draft of the settlement agreement. In the absence of a formal, signed writing, Connecticut courts assess a parties' assent to a settlement agreeing by evaluating (1) the language of the agreement; (2) the circumstances of the transaction, including the parties' motives; and (3) the purposes that the parties sought to accomplish. *Omega Engineering, Inc.*, 432 F.3d at 444.

With respect to the first factor, the agreement here includes a merger clause, and notes that any further modifications will not be binding unless written and signed by all parties. (ECF No. 118-3 at 20.) The agreement also requires that the individual signing for each party has authority to bind that party. (*Id.* at 22.) The Second Circuit has found that similar provisions "suggest that [while] a signing was *envisioned*, they do not establish that the obligations imposed by the contract were *contingent upon* the signing." *See Omega Engineering, Inc.*, 432 F.3d at 445 (upholding the enforcement of a settlement agreement where the agreement provided that it could not "be waived, altered, modified, changed, amended, rescinded or terminated *except by an instrument signed in writing* by an officer of each of the parties hereto . . . ."). The Second Circuit has emphasized that "[t]he mere intention to commit an agreement to writing will not prevent contract formation prior to execution." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). This factor weighs weakly against enforcing the unsigned agreement.

The third factor, the parties' purposes in negotiating the agreement, weighs in favor of enforcement. 50 Morgan's "motive in negotiating the Settlement Agreement was to avoid a trial."

7

*Omega Engineering, Inc.*, 432 F.3d at 445. The parties expressed a preference for resolving this case via mediation and requested extensions of the scheduling order to facilitate their settlement discussions. (ECF No. 106.) When 50 Morgan ultimately assented to the terms of the settlement agreement as described below, it did so in response to Excel's representation that it would move to reopen and litigate the case if no final agreement was confirmed. (*See* ECF No. 118-8 at 53 (email from counsel for Excel noting, "I encourage everyone to attend to this today, because I am directed to re-open the case on tomorrow's dismissal deadline if the agreement is not finalized.").

The second factor, the circumstances of the transaction, also weighs strongly in favor of enforcing the agreement.[3] The parties notified the Court that the case had settled in September and gave no indication that the settlement was contingent on execution of a final written agreement. 50 Morgan did not object to that notification or the Court's order dismissing the case. On December 19, 2019, Excel filed a motion for extension of time to file a stipulation of dismissal in which it explained that the parties "have now agreed upon the final settlement agreement to be executed by all parties," but that "additional time [was] required to make the settlement payments contemplated under the settlement agreement . . . ." (ECF No. 111 at 1.) Excel represented that the motion was made with the consent of all parties. (*Id.* at 2) 50 Morgan did not object.

The parties' email exchanges, attached to the briefing on the motion to enforce the settlement agreement, further demonstrate their intention to enter a binding agreement. Mediator John Bulman sent the parties an email confirming that the parties had agreed to settle the case and listing the amount that each party would contribute toward the settlement. (ECF No. 118-2 at 2.)

---

[3] I assume familiarity with the record attached to the parties' briefs on the motion to enforce the settlement agreement, as well as the facts discussed on the telephonic conference on July 26. (*See* ECF Nos. 118, 120, 128.) Because I provide this analysis only to supplement my earlier ruling, I do not intend this recitation of facts to be comprehensive.

The email noted that the parties would enter "project general releases," but indicated that the "precise terms are [to be negotiated]." (*Id.*) Attorneys Conrad and Corey (Attorney Conrad's law firm partner), representing 50 Morgan, were both included on the email. Neither objected.

On December 18, after three months spent exchanging drafts, counsel for TPC and Crosskey sent copies of their clients' signatures on what they understood to be the final agreement. (ECF No. 118-8 at 62–63.) Attorney Conrad interjected less than a half hour after the signatures were sent, noting he was "not sure who started the wave of signatures but [he] had not provided [his] comments on the updated draft." (*Id.*) He included an edited draft with his email, and later made additional "revisions from [his] team . . . ." (*Id*. at 61–62.) The parties each confirmed via email that the settlement agreement with the latest comments from Conrad's "team" was acceptable. Counsel for Excel later noted that she had "just spoken with [Attorney Conrad] who is traveling and he has confirmed 50 Morgan's agreement to the final settlement documents." (*Id.* at 48.) Attorney Conrad did not object to her representation. On the telephonic status conference, Attorney Conrad's recollection of the call with Excel's counsel was equivocal. He represented that he likely told Attorney Moffett for Excel that he "hoped" there would be no problem with the agreement, and that his client likely would not review and sign immediately because he was traveling. In contrast, Attorney Moffett's recollection was clear: she asserted that she asked whether Attorney Conrad's client would sign the agreement, and he responded, "Not yet because he is traveling, *but he will sign it*."[4] Based on this representation, all parties except 50 Morgan

---

[4] Both Attorney Moffett and Attorney Conrad confirmed that they would make the same statements under oath. I credit Attorney Moffett's account of the call because she represented that she clearly remembered the exchange while Attorney Conrad emphasized that the call was several months ago and he could not recall the details. Further, Attorney Moffett's recollection is more consistent with the email exchanges, in which Attorney Conrad represented that his client's signature was forthcoming. In any event, Attorney Conrad confirmed in his written declaration that "all counsel had approved a recommended draft . . . ." (ECF No. 120-2 ¶ 27.) As noted

9

provided signed copies of the agreement. (*See id.* at 29.) Attorney Conrad did not object to this new round of signatures, instead stating, "We are pushing our client and will forward as soon as we get [the executed agreement]." (*Id.* at 16.) As a result, Attorney Conrad manifested 50 Morgan's assent to the terms of the agreement, and his representation to Attorney Moffett induced the other parties to formally execute the agreement. 50 Morgan cannot render that agreement unenforceable simply because "upon further review, [it is] dissatisfied with its terms and believe[s its] representative made a mistake." *Omega Engineering, Inc.*, 432 F.3d at 445.

## IV. Conclusion

For the foregoing reasons, and for the reasons stated on the record on July 26, 2019, I find that (1) 50 Morgan clothed Attorney Conrad with apparent authority to bind it to a settlement agreement through its conduct at the mediation session and in subsequent settlement negotiations; and (2) Attorney Conrad manifested 50 Morgan's assent to the December 19, 2018 settlement agreement. (ECF No. 118-3 at 11.)

The Clerk is directed to close this case and to enter a judgment reflecting that the unsigned settlement agreement set forth at ECF No. 118-3 at 11–38 is a binding, enforceable settlement agreement between the parties and dismissing all other claims. A failure to comply with the settlement agreement is enforceable by post-judgment motion for contempt.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         July 31, 2019

---

above Attorney Conrad had apparent authority to bind 50 Morgan. Thus, the representation that he approved the draft would be sufficient to enforce the agreement.